# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DELILA UWASOMBA, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-18-2520 |
| MERRILL LYNCH, PIERCE, FENNER & SMITH, INC. | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

This case arises from the alleged discriminatory refusal of Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Defendant" or "Merrill Lynch") to hire Plaintiff Delilia Uwasomba ("Plaintiff" or "Uwasomba") based on her Nigerian national origin. Uwasomba's Amended Complaint (ECF No. 27) brings a disparate treatment claim (Count I) and a wrongful termination claim (Count II) under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*. Presently pending is the Defendant's Motion for Summary Judgment (ECF No. 35). The parties' submissions have been reviewed and no hearing is necessary. For the reasons stated herein, Defendant's Motion for Summary Judgment (ECF No. 35) is GRANTED. Summary Judgment is ENTERED in favor of the Defendant Merrill Lynch.

## **BACKGROUND**

In ruling on the pending motion for summary judgment, this Court reviews the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Scott*

*v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013). On November 5, 2016 Uwasomba applied to become a Preferred Transition Specialist Trainee with Merrill Lynch. (Pl.'s Dep. 81:8-11, ECF No. 35-2.) On November 10, 2016, after she had completed some pre-hire assessments, Uwasomba interviewed with Corporate Recruiter Susie Madden.[1] (*Id.* 86:9-14; Madden Decl. ¶ 7, ECF No. 35-3.) Uwasomba mentioned that she was Nigerian during her conversation with Madden, though she does not recall how she reached the topic of her national origin.[2] (Pl.'s Dep. 87:13-21.) After the November 10, 2016 interview, Madden advanced Uwasomba's application to two hiring managers—Stephen Solecki and Erika Fabricatore. (Madden Decl. ¶ 7.) On November 16, 2016, Solecki and Fabricatore informed Madden that they wanted to extend a conditional job offer to Uwasomba. (Madden Decl. ¶ 8.) Madden subsequently called Uwasomba and informed her that an offer letter was forthcoming. (Madden Decl. ¶ 9.) Following her normal practice, Madden warned Uwasomba not to give notice to her employer until she had passed Merrill Lynch's background check. (*Id.*; Pl.'s Dep. 118:5-16.)

Uwasomba's conditional offer letter, dated November 16, 2016, informed her that her offer was contingent upon the satisfactory completion of a background investigation. (Offer Letter, ECF No. 4 at 6.) This background check was necessary to ensure that Uwasomba did not have any prior convictions which would disqualify her from working at Merrill Lynch. Under Section 19 of the Federal Deposit Insurance Act ("FDIA"), 12 U.S.C. § 1811, *et seq.*,

---

[1] There is no dispute that Madden does not have the authority to make hiring decisions. Her job duties include identifying suitable candidates for further consideration by hiring managers and guiding prospective employees through the hiring process, including providing updates concerning the status of background investigations. (Madden Decl. ¶¶ 3-4; Pl.'s Resp., ECF No. 37 at 15 n.9.)

[2] Madden does not recall Uwasomba discussing her national origin. (Madden Dec. ¶ 7.)

Bank of America and its subsidiaries, including Merrill Lynch, are prohibited from employing individuals who have been "convicted of any criminal offense involving dishonesty or a breach of trust or money laundering, or [have] agreed to enter into a pretrial diversion or similar program in connection with a prosecution for such offense." *See* 12 U.S.C. § 1829(a). The penalties for failing to adhere to this prohibition includes a maximum daily fine of $1,000,000.00. § 1829(b). There is a "*de minimis*" exception to the FDIA's prohibition: a conviction is not disqualifying if, in relevant part, "[t]he offense was punishable by imprisonment for a term of one year or less and/or a fine of $2,500 or less, and the individual served three (3) days or less of jail time." (FDIC Statement of Policy for Section 19 of the FDI Act, *available at* https://www.fdic.gov/regulations/laws/rules/5000-1300.html).

Additionally, Transition Specialist Trainees must obtain a Series 7 and Series 66 registrations from the Financial Investment Regulatory Authority ("FINRA"). (Madden Decl. ¶ 6; Offer Letter 5.) FINRA will not issue licenses to individuals who have been convicted of certain offenses within the past 10 years. *See* 15 U.S.C. §§ 78c(a)(39), 78o(b)(4), and 78o-3(g)(2); FINRA By-Laws, Art. III, Sec. 3; (Linville Decl., ¶ 7, ECF No. 6.) There are no relevant exceptions to these restrictions.

To complete the background investigation, Uwasomba's information was forwarded to the Background Screening Investigations Group (the "Investigations Group"). (Linville Decl. ¶ 5; Madden Decl. ¶ 11.) Madden remained in contact with Uwasomba and repeatedly informed her that her background investigation was still pending. (Emails between Madden and Uwasomba, ECF No. 5.) On December 2, 2016, Uwasomba emailed Madden and claimed that Zach Vie, the New Hire Program Manager, had called her to provide her start-date.

3

(12/2/2016 12:26 PM Email from Uwasomba to Madden.)  During this call, Vie informed Uwasomba that she was cleared to work on the following Monday.  (*Id.*; Pl.'s Dep. 138:20-139:1.)  As she had done several times previously, Madden promptly informed Uwasomba that her background investigation was still pending and that she had not been cleared to work at Merrill Lynch.  (12/2/2016 2:57 PM Email from Madden to Uwasomba; Madden Decl. ¶ 12.)

Ultimately, the Investigations Group discovered that Uwasomba had been convicted of petit larceny in the Chesterfield Circuit Court in Virginia in February 2008 and received a sentence of 12 months and 4 days in jail, with 12 months suspended.  (Linville Dec. ¶ 5.)  Based on this discovery, Uwasomba's background check was deemed unsatisfactory.  (*Id.*)  On December 7, 2016, the Investigations Group sent Uwasomba a letter informing her of the results of her background check.  (12/07/2016 Letter, ECF No. 7.)

Merrill Lynch provided Uwasomba with an opportunity to contest the background check determination.  The December 7, 2016 letter informed Uwasomba that she could submit additional information within seven days to clarify or correct the results of the investigation.  (*Id.*)  Uwasomba's case was subsequently assigned to Appeals Manager Angela Linville.  (Linville Decl. ¶ 9.)  Linville contacted Uwasomba and informed her that FINRA rules precluded her from working as a Preferred Transition Specialist Trainee.  (*Id.* ¶ 10.)  Linville further explained that Uwasomba would be disqualified from *any* position at Merrill Lynch unless she could demonstrate that she met the *de minimis* exception under the FDIA; in other words, that she spent three days or fewer in jail.  (*Id.* ¶ 11.)  In an effort to prove that she had served fewer than four days in jail, Uwasomba visited the Chesterfield Circuit Court in Virginia to obtain records related to her incarceration.  (Pl.'s Dep. 188:4-12.)  The Court records

4

indicated exactly what the background investigation had uncovered: that Uwasomba had served four days in prison for petit larceny. (*Id.* 188:19-189:17.) Uwasomba ultimately did not submit to Merrill Lynch or Linville any documents relevant to her conviction and sentence. (Pl.'s Dep. 189:2-9.)

During her deposition, Uwasomba testified that she had several conversations with Linville concerning a potential alternative position at Merrill Lynch. During the course of these conversations, Linville allegedly assured Uwasomba that she was being considered for another position, that there had been a "huge mistake," but that she still "needed to show that [she] didn't spend four days in jail." (Pl.'s Dep. 199:3-200:10.) Uwasomba also testified that Linville "made it appear that [she was] not able to work for any bank" and that Linville had "acted surprised that Wells Fargo were [sic] even able to hire [her]." (*Id.* 203:2-5.) Nevertheless, during her "final conversation" with Uwasomba, Linville allegedly "pretty much stated that she was going to give [Uwasomba] a role that [she] qualified for." (*Id.* 203:19-204:2.) Uwasomba sent at least two emails to Madden expressing that Linville had mentioned "a new role that [she was] being considered for." (12/16/2016 Email from Uwasomba to Madden, ECF No. 9; 12/20/2016 Email from Uwasomba to Madden, ECF No. 10.) Linville, however, never identified an alternative position for which Uwasomba might be considered, or whether there were any roles available that did not fall under the relevant FINRA regulations. (Pl.'s Dep. 203:6-20.)

In a letter dated December 19, 2016, Merrill Lynch informed Uwasomba that it was prohibited from hiring her under FDIC and FINRA regulations because of her 4-day prison sentence for petit larceny. (Linville Decl. ¶ 14; 12/19/2016 Letter, ECF No. 8.) On December

5

20, 2016, Uwasomba and Madden spoke on the phone about Uwasomba's application status. (Pl.'s Dep. 211:21-212:2.) During the conversation, Madden informed Uwasomba that "they [were] not moving forward with [her]" and did not indicate that she was being considered for an alternative position. (*Id.* 212:3-4.) Uwasomba further alleged that Madden "made statements about Nigerians and fraud." (*Id.* 212:10-13.) At her deposition, Uwasomba repeatedly testified that she could not recall Madden's words with any greater specificity. (*See* Pl.'s Dep. 212:9 ("I can't remember. I'm trying to remember."); 222:7 ("I can't quite remember"); 222:14-15 ("I can't quite remember."); 222:16-17 ("I don't want to say the wrong things, but – I'm so sorry."); 223:10-13 ("I'm trying to remember – if it's possible it had something to do with – I don't want to say the wrong thing . . . but it's something in relation to Nigerians and fraud."); 224:2-3 ("I'm so sorry. I cannot remember her exact words."); 224:17 ("I can't remember.")

On August 16, 2018, Uwasomba commenced this action initially only against Bank of America, N.A. (ECF No. 1.) Uwasomba, then acting *pro se*, subsequently moved to file an Amended Complaint which identified Merrill Lynch as the sole Defendant. (ECF No. 10.) A second proposed Amended Complaint followed—this one naming both Merrill Lynch and Bank of America as Defendants. (ECF No. 16.) This Court granted Uwasomba's Motion to Amend the Complaint (ECF No. 16) and the operative Amended Complaint (ECF No. 27) was filed. Following discovery, Uwasomba voluntarily dismissed Bank of America, N.A. from this action. (ECF Nos. 30, 31.)

**STANDARD OF REVIEW**

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, summary judgment is proper "only when no 'reasonable jury could return a verdict for the nonmoving party.'" *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1257 (Fed. Cir. 2001) (quoting *Anderson*, 477 U.S. at 255)). When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Anderson*, 477 U.S. at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). As this Court has

previously explained, a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

## ANALYSIS

### I. Motion to Strike or Disregard.

This entire case hinges on Madden's one alleged statement concerning "Nigerians and fraud." (Pl. Dep. 212:10-13.) This vaguely described statement is the only proffered evidence of discrimination in the record. In response to Defendant's summary judgment motion, Uwasomba has submitted a declaration which claims that Madden said that "'Nigerians are prone to fraud'—*or words to that effect*." (Uwasomba Decl. ¶ 10, ECF No. 37-2) (emphasis added). Anticipating a challenge to the declaration, Uwasomba argues that her statement "does not contradict her deposition testimony," in which she repeatedly stated that she could not remember Madden's comment. (ECF No. 37 at 10 n.7.) Defendant Merrill Lynch petitions this Court to "strike and/or disregard" Uwasomba's statement because it is speculative, couched as it is in the vague qualifier "or words to that effect"; because it is inconsistent with her deposition testimony; and because it is inadmissible hearsay. (ECF No. 38 at 3-5.)

In general, "conclusionary[] and speculative statements that lack an evidentiary basis will not support or defeat a motion for summary judgment." *Ross v. Cecil Cty. Dep't of Soc. Servs.,* 878 F. Supp. 2d 606, 615 n.10 (D. Md. 2012) (citing *Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro,* 64 F.3d 962, 967 (4th Cir.1995)). Accordingly, a plaintiff cannot avoid summary judgment by presenting "conclusory assertions and unsubstantiated

8

speculation" in an affidavit. *See Larken v. Perkins*, 22 F. App'x 114, 2001 WL 1326077, at **1 n.* (4th Cir. 2001) (citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 455 (4th Cir. 1989)); *see also Nat'l Enterprises, Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000) (discounting "self-serving affidavit" describing the contents of repurchase agreements in lieu of the agreements themselves); *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) ("[S]ummary judgment affidavits cannot be conclusory. . . .").

Furthermore, a district court may disregard an affidavit which contradicts the sworn deposition testimony of the affiant. *Rohrbaugh v. Wyeth Laboratories, Inc.*, 916 F.2d 970, 976 (4th Cir. 1990). This rule of exclusion must be only be applied when there is a "bona fide inconsistency" between the deposition testimony and the affidavit. *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 314 n.6 (4th Cir. 2013) (quoting *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 n.7 (4th Cir. 2001)).

Uwasomba's affidavit in this case does not warrant exclusion, but is nevertheless insufficient to generate a genuine dispute of material fact. Uwasomba has never expressed any degree of certainty concerning the "statements about Nigerians and fraud" she referenced in her deposition. (Pl.'s Dep. 212:10-13.) Uwasomba's affidavit lends absolutely no clarity to her woefully nondescript deposition testimony. Rather than precisely state what she heard, Uwasomba only approximates Madden's words to her: "Nigerians are prone to fraud'—*or words to that effect*." (Uwasomba Decl. ¶ 10) (emphasis added). This ambiguous language neither directly contradicts the all-encompassing "statements about Nigerians and fraud" vaguely recounted at Uwasomba's deposition nor lends any clarity to her prior account. With the qualifying language "or words to that effect," the affidavit merely confirms what Uwasomba

9

repeatedly indicated during her deposition: she does not remember what Madden said to her. Though the affidavit is not a mere sham worthy of total exclusion, its conclusory, speculative verbiage only serves to obfuscate Uwasomba's testimony. Accordingly, and as further discussed *infra*, the affidavit cannot raise a genuine issue of material fact.[3]

## II. The Mixed-Motive and *McDonnell Douglas* Frameworks.

The parties disagree over the legal framework this Court must apply to Uwasomba's Title VII claims. Title VII makes it unlawful "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." § 2000e-2(a)(1). A plaintiff may pursue a Title VII discrimination claim through two avenues of proof. *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 206 n.4 (4th Cir. 2019) (citing *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005). Under the "mixed-motive" framework, the plaintiff may present direct or circumstantial evidence that the plaintiff's status in a protected class was a motivating factor in an adverse employment action. *Id.* Alternatively, the plaintiff may rely on the burden-shifting scheme established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.*; *see also Swaso v. Onslow Cty. Bd. of Ed.*, 698 F. App'x. 745, 747 (4th Cir. 2017) (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213-14 (4th Cir. 2007)).

---

[3] Exclusion is not warranted on the basis of hearsay. In the response to Summary Judgment, Uwasomba states that Madden did not express a discriminatory animus when she made statements about Nigerians and fraud, but rather was relaying the views of unknown decisionmakers. (ECF No. 37 at 15 n.9.) In reply, Defendant argues that the statements are hearsay because Madden was describing the views of a third party. There is absolutely no evidence in the record to support the contention that an unknown third party said anything about Nigerians and fraud (and there is scant evidence that Madden said anything on this topic, either). The hearsay argument is responsive to a meritless contention and is therefore moot.

Plaintiff argues that she may prevail under a mixed-motive framework because she has presented direct evidence of discrimination: specifically, Madden's alleged comment that "Nigerians are prone to fraud." Defendant argues that Plaintiff's vague recollection of statements made by Madden, who did not have final decision-making authority over the decision to hire or fire Plaintiff, does not amount to direct evidence of discrimination. Accordingly, Defendant seeks application of the *McDonnell Douglas* framework. This Court finds that Plaintiff has presented insufficient evidence to create a genuine issue of material fact under either framework.

**A. Application of the Mixed-Motive Framework.**

To prevail under the mixed-motive framework by presenting direct evidence of discrimination,[4] a plaintiff must present "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Taylor v. Va. Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (en banc), *abrogated on other grounds*, *Desert Palace v. Costa*, 539 U.S. 90, 123 S. Ct. 2148 (2003). Even a statement that reflects a "discriminatory attitude . . . must have a nexus with the adverse employment action." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006). Accordingly, the evidence must specifically pertain to an actual decisionmaker. *See Taylor,* 193 F.3d at 232 (noting that a "plaintiff qualifies for the more advantageous standard of liability applicable in mixed-motive cases if the plaintiff presents direct evidence that *decisionmakers* placed substantial negative reliance on an illegitimate criterion") (emphasis added); *Price Waterhouse v.*

---

[4] As explained *supra*, Plaintiff may also present circumstantial evidence under the mixed motive framework. Uwasomba pursues her claim based on purported direct evidence only. This Court analyzes her claims accordingly.

11

*Hopkins,* 490 U.S. 228, 277, 109 S. Ct. 1775 (1989) (O'Connor, J., concurring) (noting that "statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [do not] suffice to satisfy the plaintiff's burden").

In this case, Plaintiff has failed to present direct evidence of discrimination. As discussed *supra*, Uwasomba's recollections of Madden's comments about "Nigerians and fraud" are too vague to create a genuine dispute of material fact. Uwasomba's qualification that Madden only said "words to that effect" only adds more confusion. Even if Uwasomba had presented a more definite account of Madden's alleged discriminatory comments, however, they would not amount to direct evidence because it is undisputed that Madden did not have authority to hire or fire Uwasomba. (ECF No. 37 at 15 n.9) ("Uwasomba is not claiming that Madden made the decision not to move forward with Uwasomba.") Uwasomba's contention—advanced only in her briefing—that Madden was relaying what "they" (an unidentified group of decisionmakers) had said is an invention of counsel, unsupported by the record. Accordingly, Plaintiff cannot evade summary judgment under a mixed motive framework.

### B. Application of the *McDonnell Douglas* Framework.

Where the Plaintiff has not presented any direct evidence of discrimination, as here, she must establish her claim by circumstantial evidence through the "pretext" framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). Ordinarily, under the "pretext" framework, the burden is first on Plaintiff to make a *prima facie* case of disparate treatment by proving that (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was meeting her employer's legitimate expectations at

the time of the adverse employment action; and (4) similarly situated employees outside of her class received more favorable treatment. *Williams v. Silver Spring Volunteer Fire Dept.*, 86 F. Supp. 3d 398, 420 (D. Md. 2015) (citing *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)). To make a *prima facie* showing of a discriminatory failure-to-hire, the Plaintiff must demonstrate that (1) she belongs to a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) despite her qualifications, she was rejected; and (4) after her rejection, the position remained open and the employer continued to seek applicants from persons of her qualifications. *EEOC v. Sears Roebuck and Co.*, 243 F.3d 846, 851 (4th Cir. 2001).

If Uwasomba makes the required showing, the second step places the burden on the employer to assert a "legitimate, non-discriminatory reason" for the disparate treatment. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. 1817. If the employer meets this step, the burden then shifts back to the plaintiff to demonstrate that the employer's purported reason was "pretextual." As this Court stated in *Venugopal v. Shire Labs.*, 334 F. Supp. 2d 835 (D. Md. 2004), *aff'd sub nom*, 134 F. App'x 627 (4th Cir. 2005), "[w]hile the *McDonnell Douglas* Framework involves a shifting back and forth of the evidentiary burden, Plaintiff, at all times, retains the ultimate burden of persuading the trier of fact that the employer discriminated in violation of Title VII." 334 F. Supp. 2d at 841.

In this case, Uwasomba cannot establish a *prima facie* case of discrimination because there is no evidence that she was qualified for *any* position at Merrill Lynch. As previously explained, Section 19 of the Federal Deposit Insurance Act ("FDIA") prohibits Merrill Lynch from employing individuals who have been "convicted of any criminal offense involving

dishonesty or a breach of trust or money laundering, or [who have] agreed to enter into a pretrial diversion or similar program in connection with a prosecution for such offense." *See* 12 U.S.C. § 1829(a). Under the "*de minimis*" exception to the FDIA's prohibition, a conviction is not disqualifying if, in relevant part, "[t]he offense was punishable by imprisonment for a term of one year or less and/or a fine of $2,500 or less, and the individual served three (3) days or less of jail time." (FDIC Statement of Policy for Section 19 of the FDI Act, *available at* https://www.fdic.gov/regulations/laws/rules/5000-1300.html).

Uwasomba acknowledges that she was not qualified for the Preferred Transition Specialist Trainee position because of her prior petit larceny conviction and four-day sentence. (ECF No. 37 at 3-4) ("The PTS position required Uwasomba to qualify [under both FINRA and FDIA regulations]; therefore, Uwasomba was disqualified for the PTS."). Moreover, Uwasomba has never presented any evidence that her prison sentence lasted fewer than four days and that she could avail herself to the *de minimis* exception.[5]

Uwasomba places great emphasis on her contention that Linville told her that she would "mark her satisfactory" for an alternative position at Merrill Lynch or would otherwise arrange for her to obtain a job at Merrill Lynch.[6] (Uwasomba Decl. ¶¶ 6-7; Pl. Dep. 203:19-204:2.) Linville's purported representations, however, do not render Uwasomba qualified for any position at Merrill Lynch. It is uncontroverted that Uwasomba could not work for Merrill

---

[5] Uwasomba avers that her former attorney, who represented her during the 2008 larceny criminal proceedings, agreed to prepare a letter "concerning [her] actual length of incarceration." (Uwasomba Decl. ¶ 5.) This letter has not been provided to this Court, and it is not at all clear that the letter would have been favorable to her.

[6] Linville claims that she did not make these representations in part because she had determined that Uwasomba did not qualify for any jobs at Merrill Lynch and because she did not have authority to make employment offers. (Linville Decl. ¶ 15.) Even accepting Uwasomba's version of events, however, she has not demonstrated that she qualifies for any position at Merrill Lynch.

Lynch in any capacity because she never demonstrated that her prison sentence fell within the *de minimis* exception to Section 19 of the Federal Deposit Insurance Act.

Uwasomba's only attempt to show that she qualified for the *de minimis* exception comes in the form of an appeal to Virginia law. Pursuant to Va. Code Ann. § 53.1-116(A), a prisoner may earn good time credits to halve their term of incarceration. Accordingly, Uwasomba argues, her 4-day sentence "meant that she actually served only 2 days." (ECF No. 37 at 4 n.4.) This argument fails because there is no evidence that Uwasomba earned good time credits, or ever presented information to Merrill Lynch to this effect.

In summary, Uwasomba cannot withstand summary judgment under either the mixed motive or *McDonnell Douglas* framework applicable to her national origin discrimination claims. Uwasomba's case rests entirely on one vague statement about "Nigerians and fraud" which she cannot precisely recollect. Furthermore, the alleged statement was made by an individual who had no authority to hire her. Quite simply, she has failed to present direct evidence of discrimination related to an individual with authority to hire or fire her. Finally, she has not presented any evidence that she is qualified to work in any capacity for Merrill Lynch. Accordingly, Summary Judgment is ENTERED in favor of Merrill Lynch.

## CONCLUSION

Defendant Merrill Lynch, Pierce, Fenner, & Smith, Inc.'s Motion for Summary Judgment (ECF No. 35) is GRANTED. Summary Judgment is ENTERED in favor of the Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc.

A separate Order follows.

Dated: March 31, 2020

                                                              /s/
                                                  Richard D. Bennett
                                                United States District Judge